MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE
v. MILLER.

4-5900                                    139 S. W. 2d 248

Opinion delivered April 22, 1940.

*Henry Donham* and *Richard M. Ryan,* for appellant.

HUMPHREYS, J.   Appellee brought this suit against appellant in the circuit court of Hot Springs county to recover damages in the sum of $3,000 for an injury received by her through the alleged negligence of appellant

■■■■■■■■■■■■■■■■

in causing and permitting a hot cinder to be blown from one of its engines while she was rightfully on its depot platform in the city of Malvern which struck appellee in her left eye severely injuring it and causing her to suffer severe and excruciating pain and resulting in the permanent injury to the vision thereof and disfigurement of her face.

Appellant filed an answer denying each material allegation in the complaint and that she was entitled to recover any sum or sums on account of any of the matters or things alleged in the complaint.

The cause was tried to a jury upon the testimony introduced by the respective parties and the instructions of the court resulting in a verdict and consequent judgment in the sum of $500, from which is this appeal.

Appellee testified, in substance, that about 2:30 o'clock, p. m., on March 14, 1936, she was expecting a visit from a nephew living in Shreveport and that she, in company with Mrs. Lizzie Ann Tarver, went to the depot of appellant to look at the bulletin board to see the time of the arrival of trains; that the bulletin board was hanging on the wall of the depot, and when looking at it her side was turned toward the railroad track upon which a locomotive or engine was approaching; that when she turned in the direction of the engine her glasses dropped down on her nose and a cinder from the engine or locomotive hit her in the left eye; that she never saw the like of cinders in her life; that her eyes were in good condition before the injury and that she had never had them treated for any disease before that; that she lived in Perla and had come to Malvern to do some shopping and to ascertain the schedule of trains as she was expecting a visit from her nephew who lived in Shreveport; that he did not come that day, but came later; that after the cinder got in her eye she attempted to remove it by rubbing her eye and failing to get it out went back home where she remained for three days suffering much pain; that her daughter and husband tried to get it out and being unable to do so she went back to Malvern in company with Mrs. Julia Ramsey to see Dr. Sizemore; that she found him in his office; that his nurse or assistant was in the

office; that the doctor examined her eye and removed a cinder therefrom; that the eye began to inflame and bother her a great deal, and that she had Dr. Bramlitt treat her, who is now dead; that in addition to the great pain she suffered, she lost most of the vision in the left eye.

Mrs. Lizzie Ann Tarver testified, in substance, that she went to the depot with her friend, the appellee, to see the bulletin board and ascertain the schedule of trains on the 14th day of March, 1936, at about 2:30 o'clock, p. m.; that as they turned away from the bulletin board a train ran up and whistled and cinders flew everywhere and that while witness got one in her own eye, which she was able to get out, appellee got one in her left eye which she was unable to remove; that she had known appellee for a number of years, and that her eyes were in good condition before the injury.

Mrs. Julia Ramsey testified, in substance, that on or about the 17th day of March, 1936, she went with appellee to the office of Dr. Sizemore in Malvern, and that the doctor put appellee in a chair and threw her head back and got a cinder out of her eye; that witness saw the cinder, and that it was about as big as the small end of a match; that the nurse was in the doctor's office at the time; that she had known appellee and lived within five miles of her for forty years, and that prior to the injury appellee's eyes were in good condition.

Dr. W. F. Barrier testified that two or three years before that appellee came to his office and said she had gotten a cinder in her eye and gave him the history of the case and said that Dr. Sizemore took it out; that when she came to him, the eye was inflamed and causing her much pain. When asked what the condition of her eye was at the time he was testifying he said, "She evidently has some pressure or tumor behind the eyeball." Several hypothetical questions were propounded to the doctor and finally he said that if appellee's eye was normal at the time she received the injury or got the cinder in her eye and the cinder caused the amount of inflamation that he saw in the eye he would be of the opinion that the injury to the eye had caused the swelling in the

eye that existed at the present time. The following excerpt appears in his testimony:

"Q. You don't mean to tell the jury that that cinder caused that?

"A. I don't say that it did.

"Q. You don't say that it did not?

"A. I would surmise that if her eye was normal up to the time of the injury, it would be the cause of it."·

Jane Gilchrist testified that she was working for Dr. Sizemore on March 14, 1936, and that she knew appellee by sight; that she came to Dr. Sizemore's office on that date and told him she had a cinder in her eye and that she noticed her eye was red; that she does not remember whether he got a cinder out of her eye as it was·so long ago; that her recollection is two ladies came with her.

At this juncture in the trial, the attorney for appellant requested the court to instruct a verdict for it, but the court refused to do so over the objection and exception of appellant.

Appellant then introduced its testimony, one of the witnesses being Dr. W. G. Hodges who testified that in his opinion the condition of appellee's eye was the result of a disease of the eyeball.

It then introduced as a witness Dr. Paul Sizemore who testified that he had no recollection of having removed a cinder from appellee's eye in March, 1936, and that he had no entry in his ·book about it; that in May, 1936, he treated appellee's husband for an injury to his leg, and that at that time he noticed some lateral deviation of appellee's eye; that notwithstanding the fact that Jane Gilchrist had testified that she came to his office on March 14, 1936, to get a cinder removed from her eye, he had no recollection whatever about it.

Appellant then introduced its train dispatcher who resided in Little Rock who testified that on March 14, 1936, passenger train No. 8 arrived in Malvern at 1:57 p. m., and departed at 1:59 p. m.; that other trains passed there about that time; that the record showed that train No. 95 got there at 11:30 a. m., and left Malvern about 4

■■■■■■■■■■■■■■■

p. m.; that the passenger train was pulled by an engine using oil and that the freight train or train no 95 burned coal.

The engineer of No. 8 or the passenger train testified that the passenger train had an oil burner and that it was working properly that day.

W. B. Moore testified that he was the engineer on train No. 95 that arrived at Malvern at 11:30 o'clock and left Malvern at 4:30 o'clock according to the train sheet shown him and that as far as he could tell the engine was in perfect working condition; that hot cinders would sometimes come out of the smoke stack and that he did not get up and look down the smoke stack to see what condition it was in, but he did not remember whether it was throwing cinders or not.

Appellant introduced E. C. Koscieling who testified that he was a boiler inspector and was working for appellant on March 14, 1936, and that he inspected the engine pulling the passenger train as well as the engine pulling the freight train; that the passenger train was using an oil burner and the freight train, a coal burner; that he inspected both engines on that date before they left Little Rock, and that they were in good shape; that the engine pulling the freight train was in good shape to prevent the throwing of sparks; that he did not know how long the spark arrester had been in the engine when he inspected it on the 14th day of March, 1936, and that unless it had been in good condition he would not have O. K.'d it.

We cannot agree with appellant's contention that there is no substantial testimony in the record tending to show appellant was negligent in any respect.

Section 11138 of Pope's Digest provides that all railroads operating in whole or on part in this state shall be responsible for all damage caused by the running of trains in this state. According to substantial testimony in the record appellee was struck in the eye by an escaping cinder from the engine of one of appellant's freight or switching trains on or about 2:30 o'clock, p. m., on the 14th day of March, 1936, at a place where

she had a right to be, and that the cinder not only caused her to suffer greatly, but that it caused her to partially lose the sight of her eye. This made a *prima facie* case in her favor under the statute referred to. It cannot be said under this record that appellant overcame, by the undisputed evidence, the *prima facie* case made out in appellee's favor. The undisputed evidence does not show that the engine was supplied with the best known appliances to prevent the escape of cinders and it does not show that its engine was being properly and skillfully managed and operated at the time the injury occurred. The burden was upon it to overcome the *prima facie* case of negligence made by appellee under the statute. *Batte* v. *St. L., S. W. Ry. Co.*, 131 Ark. 568, 199 S. W. 907. The issues involved as to the liability of appellant, the extent of the injury, if any, and whether appellant acquitted itself of the duties resting upon it under the statute became jury questions and should have been submitted to the jury under proper and correct instructions.

Appellant objected to the giving of appellee's instruction No. 1, which is as follows: "You are instructed that if you find from a preponderance of the evidence in this case that the plaintiff was injured by the operation of one of the trains of the defendant company, as alleged in the complaint, then you are told and instructed by the court that the law presumes negligence on the part of the defendant company and it will be your duty and you are instructed to find for the plaintiff unless defendants have overcome that presumption by competent evidence in this case."

This instruction was inherently wrong because evidence had been introduced by appellant tending to show that it was not negligent in permitting cinders to escape from its engine and testimony had been introduced from some of the medical experts tending to show that the injury to appellee's eye could not have been caused by a cinder. In that view, it became a question for the jury to determine whether or not there was liability in this case, and it should not have been told that there was a presumption of negligence against appellant.

In the case of *St. L.-S. F. Ry. Co.* v. *Cole,* 181 Ark. 780, 27 S. W. 2d 992, this court said: "Under the construction placed upon statutes like ours, the presumption of negligence is at an end when the railroad company introduces evidence to contradict it, and the presumption cannot be considered with the other evidence, because to do this would, as stated by the Supreme Court of the United States, be unreasonable and arbitrary and would violently conflict with the due process clause of the Fourteenth Amendment."

In the Cole case, cited above, this court quoted from the Supreme Court of the United States to the following effect: "The only legal effect of this inference is to cast upon the railroad company the duty to produce some evidence to the contrary and when that is done the inference is at an end and the question is one for the jury upon all the evidence."

On account of the error in giving this instruction the judgment will be reversed, and the cause remanded for a new trial.